# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-03450-SBP

J.C.,[1]

      Plaintiff,

v.

FRANK BISIGNANO,[2] Commissioner of Social Security,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

**Susan Prose, United States Magistrate Judge**

Plaintiff J.C. brings this action under Titles II and XVI, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.*, of the Social Security Act (the "Act") for review of the Commissioner of Social Security's (the "Commissioner") final administrative decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The court has carefully considered the administrative record, ECF No. 9 ("AR"),[3] Plaintiff's brief, ECF No. 12 ("Brief"), the Commissioner's response, ECF No. 14 ("Response"), and the applicable law, and finds that no hearing is necessary. For the reasons set forth below, the court now respectfully

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] Frank Bisignano is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See* 42 U.S.C. § 405(g) (an action survives regardless of any change in the person occupying the office of the Commissioner of Social Security).

[3] The court uses "ECF No." to refer to specific docket entries in CM/ECF and uses "AR: " to refer to documents in the administrative record. The administrative record is found at ECF No. 9.

**AFFIRMS** the Commissioner's decision.

## BACKGROUND

Plaintiff applied for DIB and SSI under Titles II and XVI of the Act on May 23, 2019, alleging a disability onset date of November 1, 2018. AR: 245, 252. He alleged disability due to lumbar spine impairments, left knee impairments, arthritis, post-traumatic stress disorder ("PTSD"), bipolar disorder, depression, and panic attacks. AR: 56, 59–60, 87, 282. The Commissioner denied his applications on initial review and again on reconsideration. AR: 82, 110. An administrative hearing was held by telephone on April 12, 2021, at which Plaintiff appeared with counsel, and a vocational witness also testified. AR: 44–88.

Administrative Law Judge Matthew C. Kawalek (the "ALJ") issued a decision unfavorable to Plaintiff on May 10, 2021. AR: 16–38. Plaintiff sought review before this court. *See J.C. v. Kijakazi*, No. 22-cv-02396-REB (D. Colo.). The Commissioner moved for voluntary remand, and on March 17, 2023, the court ordered remand. AR: 1016–23. The Appeals Council issued a remand order on April 26, 2023, directing the ALJ to: (1) give consideration to a November 2021 opinion from treating physician Dr. Michele Knierim consistent with 20 C.F.R. §§ 404.1520c and 416.920c; (2) evaluate all prior administrative medical findings with explicit articulation of the supportability and consistency factors; and (3) provide an appropriate rationale with specific references to record evidence in support of the Residual Functional Capacity, or "RFC," determination. AR: 1026–27.

A second telephonic hearing was held on October 2, 2023. AR: 950–1015. On April 4, 2024, the ALJ issued another unfavorable decision, finding that Plaintiff was not disabled. AR: 920–34. This decision constitutes the Commissioner's final decision because Plaintiff did not file

2

written exceptions and the Appeals Council did not otherwise assume jurisdiction. *See* 20 C.F.R. § 404.984(d). Plaintiff then timely sought review with this court. ECF No. 1.

## DIB/SSI FRAMEWORK

A person is disabled within the meaning of the Act "only if his physical and/or mental impairments preclude him from performing both his previous work and any other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (quoting 42 U.S.C. § 423(d)(2)(A)). "However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Brandon v. Colvin*, 129 F. Supp. 3d 1231, 1232 (D. Colo. 2015) (citing *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995)).

The Commissioner is required to follow a "five-step sequential evaluation process" which guides the determination of whether an adult claimant meets the definition of disabled under the Act. 20 C.F.R. §§ 404.1520(a)(i)–(v), 416.920(a)(i)–(v). The claimant bears the burden of proof at steps one through four, while the Commissioner bears the burden at step five to show there is other work existing in significant numbers in the national economy that the claimant can perform. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

## ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process. AR: 920–34. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 1, 2018.

AR: 923. At step two, the ALJ found Plaintiff had the following severe impairments: patellofemoral arthritis and impingement syndrome of the left knee; degenerative disc disease, anterolisthesis, bilateral pars defects, disc herniation, neural foraminal narrowing, and spondylolisthesis of the lumbar spine with radiculopathy; major depressive disorder; and PTSD. AR: 923. At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. AR: 923–25.

> Between steps three and four, the ALJ assessed the following RFC:

> [H]e can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. He can stand and/or walk 4 hours and sit 6 hours of an 8-hour workday. [He] can never climb ladders, ropes, or scaffolds, and he can occasionally stoop, kneel, crouch, crawl, or climb ramps and stairs. He can tolerate frequent exposure to extreme cold or vibration, and he can have no exposure to hazards, including unprotected heights. Mentally, he is limited to understanding, remembering, carrying out, maintaining attention and concentration on, and persisting at no more than simple tasks, defined specifically as those job duties that can be learned in up to 30 days' time. He can sustain only ordinary routines and make no more than simple, work-related decisions. He can tolerate no more than occasional interaction with coworkers, supervisors, and the general public.

AR: 925. At step four, the ALJ found Plaintiff had no past relevant work. AR: 933. At step five, relying on testimony from vocational expert Thomas M. Audet, the ALJ found that Plaintiff could perform other work existing in significant numbers in the national economy, including assembler of plastic hospital products (DOT 712.687-010), small products assembler (DOT 706.684-022), and laundry folder (DOT 369.687-018). AR: 933–34. The ALJ therefore concluded Plaintiff was not disabled. AR: 934.

## STANDARD OF REVIEW

In reviewing the Commissioner's decision, the court "is limited to determining whether

the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation modified). This threshold "is not high" : substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (quotations omitted). "Substantial evidence requires more than a scintilla but less than a preponderance." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (quotation omitted).

The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight*, 756 F.3d at 1175. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200 (quotation omitted). If the evidence is susceptible to multiple interpretations, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation modified) (quoting *Zoltanski*, 372 F.3d at 1200). The court must affirm if the ALJ's decision is supported by substantial evidence and the correct legal standards were applied, even if the court believes the evidence is "equivocal." *See Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994). The court also applies the harmless error doctrine: error that would not change the outcome of the case does not warrant reversal. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

## ANALYSIS

Plaintiff seeks judicial review of the Commissioner's final decision denying his claims for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. Brief at 1. He raises three issues: (1) the ALJ failed to comply with the Appeals Council's April 2023 remand order; (2) the ALJ's evaluation of the medical opinion evidence was legally erroneous; and (3) the ALJ's symptom analysis is unsupported by substantial evidence. *Id.* For the reasons set forth below, the court respectfully finds that none of these arguments warrants remand.

### I.      The ALJ Substantially Complied with the Appeals Council's Remand Order

Plaintiff contends the ALJ once again failed to follow the Appeals Council's April 2023 remand instructions. Brief at 14–17. The remand order identified three specific deficiencies in the first decision and issued three specific directives: (1) address Dr. Knierim's November 2021 opinion using the supportability and consistency framework of 20 C.F.R. §§ 404.1520c and 416.920c; (2) evaluate all prior administrative medical findings with explicit articulation of the supportability and consistency factors; and (3) provide an appropriate rationale with specific references to record evidence in support of the RFC. AR: 1026–27.

The Appeals Council's remand order identified the specific failure in the first decision: it "assessed the persuasiveness of the prior administrative medical findings but did not sufficiently address the factors of supportability or consistency or otherwise support these assessments with sufficient rationale and specific references to the evidence of record," instead offering only "general references to 'improvement in back and knee pain,' 'diagnostic imaging,' 'musculoskeletal conditions,' 'the evidence of record,' and 'limitations in concentration.'" AR:

6

1026. The April 2024 decision is materially different. The ALJ did not simply note the opinions in passing; he addressed each medical source's opinions individually, identified specific supportability and consistency bases for each persuasiveness finding, and cited specific AR page references throughout. AR: 929–32. He addressed Dr. Knierim's November 2021 opinion explicitly, finding it "not persuasive" and articulating both supportability and consistency grounds for that conclusion with specific record citations. AR: 929–31. He addressed the opinions of Drs. McElhinney, Gillum, Naplin, and Wharry individually, explaining in each instance why he found the opinions persuasive or unpersuasive. AR: 929–32. And the RFC discussion cites specific examination findings, specific imaging, specific treatment notes, and specific documented activities — precisely the kind of specific record references the remand order required and the first decision lacked. AR: 923–33.

Plaintiff argues that the ALJ "did the same thing in this decision as he did in the prior decision." Brief at 61. The record does not bear that out. The remand order targeted the absence of a supportability and consistency analysis and the lack of specific record references. The second decision provides both. Plaintiff's real complaint is that the ALJ reached the same ultimate conclusion on remand. But alleged non-compliance with a remand order warrants reversal only where the ALJ failed to comply with a specific directive in a manner that materially implicates the applicable legal standards or undermines substantial-evidence review; it is not enough that the ALJ again concluded Plaintiff was not disabled. *See Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177–80 (10th Cir. 2020). The showing required for reversal is not made here.

**II.      The ALJ's Evaluation of the Medical Opinion Evidence was Legally Sufficient**

For claims filed on or after March 27, 2017 — including Plaintiff's May 2019

applications — ALJs no longer apply the treating-source rule or assign controlling weight to any medical opinion. 20 C.F.R. § 404.1520c(a). Instead, the ALJ evaluates the persuasiveness of each medical opinion and prior administrative medical findings by reference to five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c). Supportability and consistency are "the most important factors," and the ALJ must articulate how he considered them. *Id.* § 404.1520c(b)(2). The ALJ "may, but [is] not required to" address the remaining three factors. *Id.* For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be." *Id.* § 404.1520c(c)(1) (citation modified). For consistency, "[t]he more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinions will be." *Id.* § 404.1520c(c)(2) (citation modified). So long as the court can "trace the path of an adjudicator's reasoning," the articulation requirement is satisfied. *Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022) (quoting *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)). "The logical bridge" need not appear in a single paragraph of the decision; "it must be discernible from the decision read as a whole." *A.M. v. Bisignano*, No. 24-cv-03349-SBP, 2026 WL 1465475, at *6 (D. Colo. May 26, 2026) (citing *Garland v. Dai*, 593 U.S. 357, 369 (2021)).

### A. State Agency Medical Consultants — Drs. McElhinney and Gillum

Drs. McElhinney and Gillum reviewed the record at the initial and reconsideration levels and found Plaintiff capable of a range of light work with the ability to stand and walk a

combined six hours in an eight-hour workday. AR: 90–92, 121–24. The ALJ found these opinions "not persuasive in their entirety." AR: 929. The ALJ's stated reason was that, while the doctors supported their opinions with specific reference to the medical record, their stand/walk finding was inconsistent with examination findings showing reduced left lower extremity strength and decreased range of motion — evidence the ALJ found more consistent with the more restrictive four-hour stand/walk limitation he ultimately assessed. AR: 929. He also found the consultants' postural limitations inconsistent with the physical examination record, explaining that finding Plaintiff could frequently crouch and climb ramps and stairs and could occasionally climb ladders, ropes, and scaffolds was not supported by the degree of physical limitation documented in subsequent examinations. *Compare* AR: 91, 122, *with* AR: 925.

The path of the ALJ's reasoning on this point is readily traceable. More importantly, the ALJ's departure from these opinions benefited Plaintiff: the RFC is *more* restrictive than what the consultants recommended on every point the ALJ identified as inconsistent. The ALJ found Plaintiff could stand and walk only four hours (not six), could never climb ladders, ropes, or scaffolds (not occasionally), and could only occasionally crouch and climb ramps and stairs (not frequently). AR: 925. Where an ALJ's finding regarding a medical opinion inures to the claimant's benefit, any arguable error in the articulation of that finding is harmless. *See Pasco v. Comm'r of Social Security*, 137 F. App'x 828, 845 (2005).

In sum, this argument does not warrant remand.

**B. State Agency Psychological Consultants — Drs. Naplin and Wharry**

Drs. Naplin and Wharry reviewed the record at the initial and reconsideration levels and found Plaintiff capable of work of limited complexity requiring accuracy and attention to detail;

possessing an ability to respond appropriately to supervision and coworkers; and requiring a work environment with "minimal to no" interaction with the general public. AR: 94, 128, 646. The ALJ found these opinions persuasive. AR: 929. He found the doctors supported their opinions with specific reference to the medical record, including Plaintiff's pattern of impulsivity and judgment of others, and that Plaintiff's documented activities were broadly consistent with their conclusions. AR: 929–30. But the ALJ modified the "minimal to no" public contact limitation to "occasional," based on documented evidence that Plaintiff attended concerts, maintained friendships, and engaged in social activities. AR: 929–32; *see also* AR: 371, 529, 1343, 1387.

Plaintiff argues the ALJ erred by modifying the state agency doctors' "minimal to no" public contact limitation to "occasional" interaction with the general public. Brief at 57. That modification made the RFC less restrictive than what the reviewing doctors found — loosening near-total avoidance of public contact to tolerance of up to one-third of the workday — thereby expanding the range of work available to Plaintiff at step five. The ALJ explained the departure on the ground that Plaintiff's documented activities, including attending concerts, maintaining active friendships, and engaging in regular social activities, were inconsistent with a near-total public contact restriction. AR 929–32; *see also* AR 371, 529, 1343, 1387. That is a legitimate, record-based rationale: a claimant who attends concerts and sustains meaningful social relationships evinces the ability to tolerate public interaction at a level inconsistent with near-total avoidance. The ALJ's explanation for the modification is traceable, *Nielsen*, 2022 WL 15570650, at *5, and the cited record evidence constitutes substantial evidence in support of it. *Biestek*, 587 U.S. at 103. This argument likewise does not warrant remand.

### C.  Dr. Debbie Urioste

Dr. Urioste, Plaintiff's primary care provider, offered a treating source statement in late 2020 that Plaintiff had "a number of medical and psychiatric problems that inhibit[ed] his ability to work" and that, if he had knee or back surgery, he would "be unable to work for quite a long period of time." AR: 350. The ALJ found this opinion unpersuasive for two independently sufficient reasons. AR: 930. First, to the extent the statement was a conclusion on the ultimate issue of disability, it addressed an issue reserved to the Commissioner and was "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3)(i); *see Staheli v. Comm'r, SSA*, 84 F.4th 901, 905-06 (10th Cir. 2023). The ALJ was not required to evaluate persuasiveness of that aspect of Dr. Urioste's statement at all. Second, to the extent the statement could be read as a medical opinion, the ALJ found it unsupported by Dr. Urioste's own examination findings, which — outside of reduced left lower extremity strength — were largely benign, including normal gait, intact sensation, and normal mental status. AR: 930; *see* AR: 586, 591, 596, 610, 614, 716.

Plaintiff argues Dr. Urioste's examinations consistently revealed pain. Brief at 57. That is accurate, and the ALJ acknowledged Plaintiff's painful impairments. AR: 924. But noting the presence of pain on examination is not the same as identifying specific functional limitations in vocationally relevant terms. Sections 404.1513(a)(2) and 416.913(a)(2) require that a medical opinion reflect what the claimant can still do despite impairments with functional specificity. A statement that conditions "inhibit" the ability to work does not meet that standard. The ALJ's path of reasoning on Dr. Urioste's opinion is traceable, and substantial evidence supports his finding. *See Nielsen*, 2022 WL 15570650, at *5.

### D.  Dr. Michele Knierim

Dr. Knierim, a family medicine practitioner, submitted two opinions. In 2020, she opined that Plaintiff could sit three hours in a workday, stand and/or walk five hours in a workday, lift up to thirty pounds occasionally, and use his hands only occasionally, and was precluded from working forty hours per week on a regular and continuing basis. AR: 811. In 2021, she opined that Plaintiff had medical conditions preventing manual labor; that his left knee pain limited his ability to lift; that he could not sit longer than twenty minutes at a time; and that he could walk only if he could stop regularly due to pain. AR: 1254. The Appeals Council noted this November 2021 opinion — submitted after the first decision — appeared to apply retroactively to the period at issue and directed the ALJ to consider it on remand. AR: 1026–27. The ALJ did so and found Dr. Knierim's opinions unpersuasive. AR: 929–31.

Plaintiff argues this constitutes reversible error because: (a) the ALJ stated Dr. Knierim's "own grossly normal objective exam findings" did not support her limitations, when her treatment records were never obtained, and (b) the ALJ stated Plaintiff did not allege upper extremity difficulty, when the record contains a January 2020 notation that Plaintiff reported his neck and left upper extremity became numb. Brief at 57–60; *see also* AR: 656, 930–31. The Commissioner concedes the first characterization was inaccurate. Response at 16.

The court agrees that both characterizations were imprecise. But an ALJ's evaluation does not require remand merely because one or two stated reasons are unsupported, where the ALJ articulated other legally sufficient reasons supported by substantial evidence. *See Wilson v. Astrue*, 602 F.3d 1136, 1145–46 (10th Cir. 2010) (concluding that the ALJ's determination was supported by substantial evidence, even though some aspects of the evidence "standing alone

would be insufficient to support an adverse credibility finding as to a subjective pain complaint"); *Pickup v. Colvin*, 606 F. App'x 430, 432–34 (10th Cir. 2015) (affirming a district court order upholding the denial of a claim for social security disability benefits despite two unsupported rationales by the ALJ, where "the balance of the ALJ's credibility analysis [was] supported by substantial evidence") (quotation omitted). The question is whether the ALJ's remaining rationale permits the court to follow the adjudicator's reasoning and is supported by substantial evidence. It does.

*Supportability*. Setting aside the inaccurate reference to Dr. Knierim's own examination findings entirely, the ALJ identified two independent supportability deficiencies grounded in the opinions themselves.

First, both opinions were predominantly reflective of Plaintiff's self-reported complaints rather than objective clinical findings. AR: 930. The 2021 opinion accepted Plaintiff's subjective characterization of his limitations — "he cannot sit for longer than 20 minutes"; "he can walk but has to stop regularly due to the pain" — tracking his reports of pain without citing any examination findings, diagnostic imaging, or functional testing to corroborate them. AR: 1254. An ALJ may appropriately discount an opinion premised on the claimant's subjective complaints rather than the source's own objective findings. *See R.T. v. Bisignano*, No. 24-cv-02474-TPO, 2026 WL 879220, at *7 (D. Colo. Mar. 31, 2026); *Mileto v. Comm'r, SSA*, No. 21-1403, 2022 WL 17883809, at *3 (10th Cir. Dec. 23, 2022). Second, and independently, the limitations were expressed in vague, non-vocationally relevant terms. AR: 930. A statement that Plaintiff "can walk but has to stop regularly" does not translate into the function-by-function specificity that a vocational assessment requires. *See Ronald S. v. Kijakazi*, No. 2:21-cv-00358-DAO, 2022 WL

4611370, at *5 (D. Utah Sept. 30, 2022); *R.T.*, 2026 WL 879220, at *7.

A reasonable mind could accept these conclusions as adequate grounds for a supportability finding, and the court may not displace them. *Biestek*, 587 U.S. at 103.

***Consistency***. The ALJ found Dr. Knierim's opinions concerning limitations inconsistent with the broader record in several specific respects. AR: 930. The twenty-minute sitting limitation was inconsistent with Plaintiff's documented bilateral hand coordination and the absence in the treatment record of any self-reports of difficulty sitting, AR: 631, and his active metalwork hobby requiring sustained use of his hands. AR: 968–69, 1287. The walking limitation was inconsistent with the substantial body of examination findings throughout the record documenting normal gait on the majority of documented visits. AR: 930; *see also* AR: 586, 591, 596, 633–34, 650, 653–54, 658–59, 716, 741–42, 776, 907–08. As to the notation of neck and upper extremity numbness, the January 2020 note documents a single reported episode that Plaintiff described as resolving spontaneously. AR: 656. A single self-reported episode that resolved on its own is a thin reed on which to hang hand-use limitations, and the ALJ was not required to treat it as demanding a more restrictive RFC.

In short, a reasonable mind could accept the ALJ's consistency analysis as adequate. *Biestek*, 587 U.S. at 103.

***Duty to develop.*** Plaintiff argues the ALJ's entire treatment of Dr. Knierim's opinions was fatally compromised because her treatment records were never obtained. Brief at 57–59. The court is respectfully unpersuaded by this argument.

The duty to develop the record is substantially diminished where a claimant is represented by counsel. "In cases such as this one where the claimant was represented by counsel

at the hearing before the ALJ, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (citation modified). Plaintiff's counsel, who was present and active at the October 2023 remand hearing, affirmatively represented to the ALJ that the only outstanding records were from Apex Physical Medicine and Rehabilitation. AR: 1241. No mention was made of any outstanding records from Advantage Family Medicine, where Dr. Knierim practiced. *Id.*

Having failed to identify Dr. Knierim's records as outstanding, counsel cannot now fault the ALJ for failing to obtain them independently. *Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008) (holding that there was no need to further develop the record where "there was no request from [claimant's] counsel for any other existing medical records to be obtained, for a consultative mental examination to be performed, or for any other development of the record to be undertaken") (quotation omitted). Moreover, the ALJ's supportability finding was premised on the language of the opinions themselves — not on a comparison with treatment records — and would stand regardless of what those records showed.

### E.  Therapist Sarah Munk, MA, LPC

Ms. Munk provided a November 2020 opinion on a checkbox form that Plaintiff would be off task more than 30% of the workday, absent from work four or more days per month, unable to complete a workday four or more days per month, and unable to obtain and retain competitive employment. AR: 812–14. The ALJ found this opinion unpersuasive, and substantial evidence supports that finding. AR: 931–32.

*Supportability*. The ALJ found Ms. Munk's checkbox form lacked specific objective

findings to support the extreme limitations endorsed, and that the limitations appeared to reflect Plaintiff's self-reported symptoms rather than Ms. Munk's own independent clinical assessment. AR: 931–32. This finding has support in the record: Ms. Munk's own long-term treatment notes — spanning approximately four years — do not reflect the degree of concentration and attendance deficits her checkbox form supported. To the contrary, the notes document consistent, progressive improvement in coping skills, a reduction in suicidal ideation, and improved mood over the course of treatment. *See* AR: 540, 549, 801, 897, 1289, 1307, 1485. "The Tenth Circuit has explained that medical source opinions presented through check-box forms are not necessarily improper per se, but such opinions must be supported by substantial evidence, either on the forms or elsewhere in the record." *R.T.*, 2026 WL 879220, at *9 (citing *Anderson v. Astrue*, 319 F. App'x 712, 723–24 (10th Cir. 2009)).

The form here did not include supporting clinical findings, and the longitudinal record does not supply them for the specific limitations endorsed. A reasonable mind could accept this supportability analysis. *Biestek*, 587 U.S. at 103.

*Consistency*. For consistency, the ALJ canvassed an extensive body of mental status examination findings from Ms. Munk's own contemporaneous treatment notes and from other providers across the four-year treatment course. AR: 931–32; *see also* AR: 458, 497, 500, 513, 521, 524, 528, 532, 544, 548, 552, 557, 566, 794, 800, 803, 806, 893, 896, 1285, 1311, 1320, 1326, 1355, 1366, 1373, 1379, 1386, 1390, 1394, 1417–19, 1427, 1431, 1439, 1443, 1447, 1451, 1467–69, 1480, 1484, 1487, 1491, 1504, 1516. On the majority of documented visits, Plaintiff displayed cooperative behavior, normal memory, intact attention and concentration, and organized thought processes. AR: 928–29. The ALJ found Ms. Munk's opinion — that Plaintiff

could not complete a workday or stay on task for four or more days per month — inconsistent with this extensive longitudinal record. And a reasonable mind could accept that finding. *See R.T.*, 2026 WL 879220, at *9.

Furthermore, no treating, examining, or state agency source provided a well-supported, function-specific opinion that Plaintiff's mental impairments would result in work-preclusive off-task time or absences at any clinically grounded rate. That evidentiary absence is itself significant; the claimant bears the burden of establishing that RFC limitations are warranted, and the complete absence of supporting medical opinion evidence on this point is relevant to whether that burden has been met. *See A.M.*, 2026 WL 1465475, at *7; 20 C.F.R. § 404.1545(a)(3). An ALJ is not required to include limitations in the RFC that are not supported by the record evidence or medical opinion. *See Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016). And even if this court were to disagree "with the ALJ's ultimate conclusion, this Court may not overturn it because it is supported by substantial evidence." *R.T.*, 2026 WL 879220, at *9.

III.     **Substantial Evidence Supports the ALJ's Symptom Analysis**

The ALJ follows a two-step process when evaluating a claimant's reported symptoms: first, determine whether a medically determinable impairment could reasonably be expected to produce the alleged symptoms, and second, evaluate the intensity, persistence, and limiting effects of the symptoms in light of the record as a whole. *Social Security Ruling 16-3P Titles II and XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); *Luna v. Bowen*, 834 F.2d 161, 1664 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(5)(A)). The factors an ALJ considers at the second step include objective medical

evidence, treatment type, treatment effectiveness, daily activities, and work history. *See* 20

C.F.R. § 404.1529(c)(3). Importantly, there is a "difference between what an ALJ must consider

as opposed to what he must explain in the decision." *Mounts v. Astrue*, 479 F. App'x 860, 866

(10th Cir. 2012). The ALJ need not go factor-by-factor through the regulatory list; he need only

set forth the specific evidence on which he relied. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th

Cir. 2000). Even if the court were to disagree with one or more of the ALJ's stated reasons, the

finding should be affirmed if substantial evidence supports the others. *Wilson*, 602 F.3d at 1145–

46.

The ALJ satisfied step one, finding that Plaintiff's severe impairments — lumbar spine

disease with radiculopathy, left knee patellofemoral arthritis with impingement syndrome, major

depressive disorder, and PTSD — could reasonably be expected to cause the alleged symptoms.

AR: 926. At step two, the ALJ found that Plaintiff's statements about the intensity, persistence,

and limiting effects of his symptoms were "not entirely consistent with the medical evidence and

other evidence in the record," and articulated five specific reasons for that conclusion supported

by the record. AR: 926–29. The ALJ's symptom analysis need not be consolidated into a single

section of the decision; the logical bridge between the evidence and the RFC finding must simply

be discernible from the decision read as a whole. *A.M.*, 2026 WL 1465475, at *5-6 . It is readily

discernible here.

***Objective medical evidence.*** Plaintiff argues the ALJ cherry-picked normal findings while

ignoring abnormal ones. Brief at 62. The record does not support that characterization.

To the contrary, the ALJ explicitly acknowledged the abnormal findings: imaging

showing Grade 2 anterior spondylolisthesis with progressive listhesis on flexion, lower lumbar

degenerative disc disease, and bilateral pars defects, AR: 924, 927–28; clinical findings of decreased left leg strength, positive straight leg raises, and antalgic gait on multiple occasions, AR: 924, 927–28; and mental status examinations showing poor concentration, distractibility, and periods of abnormal mood. AR: 924, 928–29. He then weighed those abnormal findings against the equally substantial body of normal findings: normal gait without assistive devices documented on the majority of physical examination visits, AR: 586, 591, 596, 633–34, 650, 653–54, 658–59, 716, 741–42, 776, 907–08; normal strength in all extremities except the left lower extremity, AR: 640, 653–54; and mental status examinations documenting cooperative behavior, normal memory, normal attention, and normal concentration on the great majority of documented mental health visits. AR: 458, 497, 500, 513, 521, 524, 528, 532, 544, 548, 552, 557, 566, & *passim*. As the Sixth Circuit Court of Appeals has persuasively explained, an allegation of cherry-picking "is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014); *accord Alarid v. Colvin*, 590 F. App'x 789, 795 (10th Cir. 2014) ("In citing what he contends is contrary evidence, [the claimant] is asking us to reweigh the evidence, which we cannot do.") (citing *Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007) ("We review only the *sufficiency* of the evidence, not its weight.")).

That Plaintiff can point to some contrary evidence in the record does not demonstrate that the ALJ's finding is unsupported by substantial evidence. Rather, that merely indicates the existence of conflicts in the evidence, which the ALJ—and not this court—properly resolves as factfinder.

**Conservative treatment.** The ALJ found Plaintiff's choice to manage his back pain

through injections and physical therapy, rather than pursue the surgical fusion recommended by his spine care provider, was relevant to assessing alleged symptom severity. AR: 927; *see also* AR: 636, 655, 905. Treatment type is a recognized factor under 20 C.F.R. § 404.1529(c)(3)(iv)–(v). The ALJ acknowledged that some providers had recommended surgery and that Plaintiff expressed anxiety about surgical risks and the possibility of paralysis. AR: 927; *see* AR: 656. The ALJ did not discount Plaintiff's stated reasons for avoiding surgery, but he found that the overall treatment picture — conservative management with injections and physical therapy rather than surgery — was relevant context for assessing the degree of limitation Plaintiff alleged. An ALJ is not required to accept a claimant's explanation for his treatment choices as dispositive of the symptom evaluation, *Bell v. Colvin*, 645 F. App'x 608, 613 (10th Cir. 2016), and a reasonable mind could view Plaintiff's election of conservative management as probative of the degree of limitation he actually experienced. *Biestek*, 587 U.S. at 103.

The ALJ also noted that Plaintiff managed his mental health symptoms not with prescription antidepressants or anti-anxiety medication, but by smoking medical marijuana. AR: 927; *see also* AR: 388, 392, 1359–60. Plaintiff had been offered medication management through his treatment provider and declined. AR: 1287. The ALJ found this consistent with treating mental health conditions conservatively, and a reasonable mind could accept that observation as relevant to the severity assessment. *Biestek*, 587 U.S. at 103.

***Efficacy of treatment.*** Evidence that treatment relieves even some of a claimant's symptoms is relevant to the symptom evaluation. *White v. Barnhart*, 287 F.3d 903, 909–10 (10th Cir. 2001) (finding that the ALJ adequately supported his credibility determination where he

pointed to the claimant's "admission that medication relieved some of her pain to further support [the ALJ's] belief that she was capable of performing more extensive work activities than she acknowledged"). Here, the ALJ cited specific record evidence of this type: by May 2020, Plaintiff reported being "at least 80% better" following his February 2020 lumbar injection, AR: 741; by February 2021, he reported that his most recent lumbar epidural steroid injection had provided "70 to 75% pain relief for at least 6 months," AR: 905; and he acknowledged having received approximately five injections, reporting that he "ha[d] done well with all of them." AR: 905. For his knee, Plaintiff reported feeling approximately 50% improved after just the initial course of physical therapy, AR: 362, and by February 2021, following knee surgery, examinations documented normal gait, intact sensation, and full (5/5) bilateral lower extremity strength, AR: 907–08. As for his mental health, Ms. Munk's own treatment notes document progressive functional gains across a four-year course: reduced irritability, AR: 540; progress with impulse control, AR: 549; improved mood, AR: 801; effectiveness of dialectical behavior therapy skills, AR: 1289; and "drastically reduced" suicidal ideation. AR: 1307. A reasonable mind could accept this longitudinal record of response to treatment as inconsistent with the degree of limitation Plaintiff alleged. *Biestek*, 587 U.S. at 103.

*Activities of daily living.* The ALJ cited an extensive, record-grounded catalog of Plaintiff's documented activities during the relevant period, including mowing his lawn, AR: 1132; painting a fence, AR: 1133; playing paintball, AR: 1133–34; attending concerts and comedy clubs, AR: 371, 529, 1403, 1492, 1505; playing frisbee golf, AR: 1133–34; frequenting the shooting range, AR: 69, 514, 522, 549, 570, 804, 897; working at a gun show, AR: 969, 1359, 1387, 1428, 1432; housesitting and petsitting, AR: 67, 1387, 1391; creating and selling

metalwork for income, AR: 70, 404, 968–69, 1287, 1304, 1384, 1432; helping family with errands and transportation, AR: 1374; driving regularly, AR: 303, 368, 1420; and participating in periodic group therapy. AR: 451, 455, 459, 1304. AR: 928–29. Although "sporadic performance" of household tasks does not establish ability to engage in substantial gainful activity, *Frey v. Bowen*, 816 F.2d 508, 516–17 (10th Cir. 1987), an ALJ may and should consider activities when they undercut a claimant's reported symptoms. *Wilson*, 602 F.3d at 1146. Here, the breadth and regularity of the documented activities — spanning physical exertion (paintball, mowing, fence painting), social engagement (concerts, comedy clubs, friendships), skilled manual work (metalwork), and public-facing employment activity (gun show) — provide a reasonable basis for finding the record inconsistent with alleged disabling limitations. *See Bainbridge v. Colvin*, 618 F. App'x 384, 388 (10th Cir. 2015).

Plaintiff testified at the second hearing that many of these activities had declined significantly since earlier periods in the record. AR: 65–66. The ALJ recognized and acknowledged this testimony. AR: 928. But an ALJ is not required to accept a claimant's hearing testimony about activity limitations at face value where contemporaneous treatment notes document ongoing participation in those activities, and the ALJ's credibility determination regarding those varying reports is within the ALJ's exclusive province. *Bell*, 645 F. App'x at 613; *Thomas v. Berryhill*, 685 F. App'x 659, 661 (10th Cir. 2017). Indeed, where — as here — a claimant's self-reported symptom severity has varied materially across different examining contexts and across time, that pattern of inconsistency reasonably informs the ALJ's global assessment of the claimant's subjective allegations. *See A.M.*, 2026 WL 1465475, at *7. The court may not disturb that weighing by the ALJ.

*Work history and work-related activities.* Finally, the ALJ found Plaintiff's work-adjacent activities during the relevant period inconsistent with his alleged inability to work. AR: 928–29. Plaintiff created metalwork art from scrap metal and sold it for income, AR: 1287, 1304, 1384, 1432; sold items at flea markets, AR: 844; worked at a gun show, AR: 969, 1359, 1387, 1428, 1432; and was offered a job at a pawn shop that he declined — not because he could not perform the work, but because he did not believe he could sustain full-time employment, AR: 967–68, 1315. In Plaintiff's own words, he "wanted to find ways to have income without being employed." AR: 1287. He also reported interest in competing on American Ninja Warrior, AR: 758, and acknowledged that he declined work opportunities because he was unwilling to stop using marijuana for employment purposes, AR: 1287. A reasonable mind could weigh Plaintiff's income-generating activities, his job offer declination on non-impairment grounds, and his expressed preference against formal employment as probative of the degree of functional limitation he actually experienced. *Biestek*, 587 U.S. at 103; *see also* 20 C.F.R. § 404.1571 ("Even if the work you have done [during a period of claimed disability] was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

The ALJ articulated five specific, evidence-based reasons for finding Plaintiff's alleged symptom severity inconsistent with the record as a whole. AR: 926–29. Substantial evidence — "more than a scintilla" — supports those reasons. *See Zoltanski*, 372 F.3d at 1200. If "there may be an equally logical interpretation for the evidence, that is not a sufficient basis to overturn the ALJ's decision." *R.T.*, 2026 WL 879220, at *10 (citing *Zoltanski*, 372 F.3d at 1200). This court may not reweigh the evidence, substitute its own judgment, or reject the ALJ's finding even if the record could be read to support a more restrictive RFC.

## CONCLUSION

For the reasons set forth above, the court respectfully **AFFIRMS** the Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The Clerk of Court is directed to enter judgment in favor of Defendant and to close this case.

DATE: May 29, 2026                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge